UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| v. | ) | Docket No. 20-10015-DJC |
| ZAOSONG ZHENG, | ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF RELEASE ON CONDITIONS

This Court heard multiple days of argument and testimony on the issue of release and risk of flight, and initially found that there were conditions sufficient to allow Mr. Zheng to be released pending trial. After further evidence about the apparent state of his apartment, the Court reversed that decision and ordered Mr. Zheng held, on December 30, 2019.

Since that date, the undersigned have been retained by Mr. Zheng's wife's family to represent him, and an indictment has been returned. The only additional charge, which falls under the "smuggling" statute, 18 U.S.C. § 554, is effectively a charge of failing to properly label the samples found in Mr. Zheng's suitcase on December 9, 2019, in accordance with regulations buried in the Code of Federal Regulations. For the reasons that follow, there are conditions that will assure that Mr. Zheng will appear as required in this Court for trial, and he asks that the Court reconsider the decision to detain him and set conditions of release as proposed herein.

Mr. Zheng, as the Court has heard, is a 30-year old citizen of China. Although his wife's family is middle class (her parents are engineers) and is funding his defense, his own family is very poor. He excelled in school and earned a medical degree in China. After his father died

from cancer, he entered a Ph.D. program to conduct cancer research. He was in the United State as a part of his Ph.D. studies, working in a cancer research lab at Beth Israel Hospital for two years before returning to China to complete his studies and write his dissertation. He has always excelled in his studies and in his medical practice and has devoted his life to his work.  He has never been in any sort of trouble before these charges.

Mr. Zheng's wife, Wenjie Zhu, is also in the United States conducting research at the National Institute of Health.  She has attended all of the hearings and will be present for the arraignment on the indictment in this case. She has been able to raise $25,000 additional funds for bail in addition to the $15,000 which her father's friend previously posted, and which it is our understanding remains in the clerk's office. This is a substantial sum for his wife's family and reflects how strongly Mr. Zheng's wife and her family believe in him.

The Court, in the December 30 hearing, appeared to be swayed towards detaining Mr. Zheng because of the evidence, (1) that Mr. Zheng had packed suitcases that he brought to the airport on December 10, the day after he was prevented from boarding his initial flight to China and the vials were discovered in his suitcase,[1] and (2) another person was supposedly assuming the lease on his apartment as of January 2 while his return ticket was for December 29. The Court reasoned that it was implausible that Mr. Zheng would be returning on December 29 to find a new apartment by January 1, and that this supported an inference that he was not intending to return at all. This reasoning overlooks the fact that all of these arrangements were made before Mr. Zheng arrived at the airport on December 9, before his luggage was searched and before he

---

[1] While it is irrelevant to the charges in the indictment, the government characterized the vials as "hidden" in a sock in his suitcase. The vials were in a sock, but it is far more plausible that they were there to protect them from being broken than to hide them from inspection. If someone is deliberately attempting to hide something from being discovered in an airport search of luggage, this is a totally ineffectual way to do it. It is, on the other hand, an effective way to buffer fragile containers from the rough handling of baggage handlers.

was questioned. We understand from his wife that he had, before leaving, already arranged to move to a different apartment in the same building with the friend who was staying at the apartment in his absence, Weihai Liu (discussed in the December 30 hearing, tr.p. 14). His things were packed because he would be moving with Mr. Liu on January 1, in the same building. He had purchased a return ticket to be back on the 29th. He had 8 months left to work in the Beth Israel lab. All of these arrangements were in place before Mr. Zheng left for the airport on December 9.

But more significantly, the charges now before the Court do not warrant detaining Mr. Zheng. While the statutory maximums are five and ten years, respectively, the Guideline ranges, from the undersigned's preliminary review, are most likely 0-6 months. It is not clear what Guideline applies to the failure to label charge, but of those referencing 18 U.S.C. § 554, the most analogous is probably § 2Q2.1 (offenses involving fish, wildlife plants)[2], with a base offense level of 6. Similarly, the BOL for false statement under § 2B1.1 is 6. We see no argument for any of the enhancements in either section.[3],[4] If the two counts are grouped, the

---

[2] The other referenced guidelines to the statute are 2B1.5 (Cultural Heritage or Paleontological Resources), 2M5.1 (Evasion of Export Controls) and 2M5.2 (Export of Arms, Munitions or Military Equipment/Services without a License).

[3] The government hinted at possible charges involving trade secret violations, but they have not materialized and there is no basis to attribute any value to the allegedly mislabeled items. Similarly there is no basis to attribute any commercial value to them. The work Mr. Zheng was doing is basic research, which while in some cases produces results that can be commercialized, in most cases it does not.

[4] The Wenyi Wei Lab has a webpage describing its research focus: "The major focus of research in my new laboratory will be aimed at understanding how APC and SCF activities contribute towards cell cycle regulation and subsequent tumor formation. More specifically, I am interested in elucidating the underlying mechanisms that define the oscillation of APC and SCF activity in different cell cycle phases. Currently I am pursuing the underlying mechanisms that timely regulate APC/Cdh1 activity in different cell cycle phases. Additionally, I am also interested in understanding whether other layers of crosstalk between the APC and SCF complex exist. Furthermore, I would like to identify novel downstream targets for both APC and SCF complexes, which will help pinpoint their functions in both cell cycle control and tumor formation. To this end, I have developed biochemical purification approaches that would allow me to identify novel downstream targets for APC/Cdh1 and SCF/Fbw7 complexes. In addition, I am also interested in defining the tumor suppressor function of Cdh1 utilizing conditional Cdh1 knockout mice. To achieve these goals, my lab will use multidisciplinary approaches including biochemical and genetic analysis. *In the long term, I hope that a better understanding of the multilayer regulation of the delicate proteolysis pathways will lead us to the design of more efficient intervention strategies to combat cancer and other diseases.*"
https://www.bidmc.org/research/research-by-department/pathology/laboratories/wenyi-wei-lab The emphasized

resulting BOL is 6.  If they are not, the resulting BOL is 8.  In either case, the range is 0-6 months.

Mr. Zheng should not be detained for proceedings that could take many months, or even more than a year, given the strong likelihood that he will do no, or little, time if he is convicted. Moreover, our view is that he has a very good chance of acquittal at trial, and we have so advised him. Mr. Kelly, his federal defender, argued eloquently why, given his career, he would not want to flee and leave open charges in this case.  He would be severely restricted in that career, unable to travel to attend conferences, unable to visit universities if invited to teach or conduct research outside of China. But in addition, based on our initial investigation, we understand that Mr. Zheng's career in China would be ruined if he returns with these charges unresolved. He will not be able to complete his Ph.D. and his ability to practice medicine will be curtailed. His wife's family and her father's friend are prepared to post substantial money to assure his presence, and for him to leave would cause him shame with his in-laws and strain that relationship. He is prepared to stay here and fight these charges.

The Court was initially prepared to allow Mr. Zheng to be released under GPS monitoring, with travel restricted to Boston and an exclusion for Logan Airport. As stated above, his wife is prepared to post $25,000.00 bail, for a total of $40,000.00 bail, to secure his presence for trial.  Her family is paying for his defense and will pay to maintain his apartment for the duration of these proceedings.[5] The apartment he was living in with Mr. Li is still in his name and Mr. Zheng's wife has paid rent for January (she has provided us with a copy of the cancelled rent check, which we can show the Court). With her family's help she will continue to pay rent

---

sentence (our emphasis) makes clear that any practical applications of the lab's work is a long-term aspirational goal, not a current reality.

[5] Mr. Zheng's wife has paid the rent for January and is prepared to continue to do so until the case is resolved, with her family's help.

on that apartment for the duration of this case if Mr. Zheng is released to live there. The Court can impose in-person reporting requirements at probation, daily if it deems this necessary, to insure compliance. There is nothing in Mr. Zheng's history that hints that he will act other than as a law-abiding person during this case and in the future.  We are confident that he has a strong case for trial and that his exposure to jail time if convicted is small, and we have conveyed this to him.

Given the charges now pending, the likely guidelines for those charges, and the proposed conditions, including substantial cash bail, the Court should find that there are adequate conditions of release, as outlined above, to ensure Mr. Zheng's presence for trial.

.

Respectfully submitted,
By his attorney,

/s/ David Duncan
Norman S. Zalkind (BBO #538880)
David Duncan (BBO #546121)
Inga S. Bernstein (BBO #627251)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
dduncan@zalkindlaw.com

Dated: January 31, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand delivery and by electronic filing on this date.

/s/ David Duncan