**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) ) | |
| v. | ) ) | Criminal No. 20-10015-DJC |
| **ZAOSONG ZHENG,** | ) ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                 **March 30, 2020**

**Introduction**

Upon the motion of the United States to appeal the March 6, 2020 Order Setting Conditions of Release ("Release Order") for Defendant Zaosong Zheng ("Zheng"), D. 77, the Court has made an independent, *de novo* review, see United States v. Pierce, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990), of the record and counsel's arguments. For the reasons stated below, the Court DENIES the motion to revoke the Release Order, D. 77, and the Release Order shall remain in place.

Briefly, the Court will recount the relevant procedural history as it reveals the considerable attention given to whether a pretrial order of release was appropriate for Zheng and, if so, under what conditions. On December 10, 2019, Zheng was charged by criminal complaint with making false statements in violation of 18 U.S.C. § 1001. D. 3-1. These charges arose of Zheng's statements to federal officers at Logan International Airport on the prior day, December 9th. Zheng, a Chinese national employed at the time as a researcher at Beth Israel Deaconess Medical Center ("BIDMC") in Boston, was scheduled to depart on a flight to Beijing, China. D. 3-1 at 2.

1

In his checked luggage, officers with Customs and Border Protection ("CBP") discovered twenty-one vials of what appeared to be biological materials that were not properly declared or packaged for transport on a commercial flight.  D. 3-1 at 3.  When CBP officers asked Zheng if he was traveling with any biological items or research materials, he denied same.  D. 3-1 at 3.  Later in secondary inspection, Zheng explained that he had not declared the vials because they were not important and not related to his research and, later said that a friend had provided them to him.  D. 3-1 at 3.  As alleged, Zheng later admitted that he had stolen eight of the vials from BIDMC and that he had replicated the others based upon another's research and he had done so without BIDMC's knowledge.  D. 3-1 at 3.  Zheng further indicated that he was planning to work on research in China using these vials.  The CBP officers seized the vials and detained his electronic devices, including a laptop of another person, Lei Liu, which appeared to contain research material.  D. 3-1 at 4; D. 76 at 3.  Zheng was allowed to leave, but the CBP officers indicated that he may be able to retrieve his electronic devices if he returned to the airport the next day for another flight.  D. 76 at 4.

On December 10, 2019, Zheng returned to Logan, having booked a flight to China for that afternoon.  D. 76 at 4.  Agents of the Federal Bureau of Investigation ("FBI") interviewed Zheng, who, after being Mirandized in his native Mandarin, agreed to waive his Miranda rights and give a statement.  D. 76 at 4.  In the course of that interview, he allegedly admitted that he had stolen the specimens from BIDMC and was intending to use them for cancer treatment research in China.  D. 76 at 4.  At the end of the interview, the agents arrested him on the false statement charge in the complaint.  D. 3-1; D. 76 at 4.

Zheng made his initial appearance in Court on December 11, 2019 and the government moved for detention on the ground that Zheng posed a serious risk of flight under 18 U.S.C. §

3142(f)(2)(A).  The detention hearing was held over the course of two days, December 16, 2019 and December 18, 2019.  D. 14, 16, 48, 49.  On December 18, 2019, the Court ordered Zheng's release pending trial on certain conditions.  D. 18.  Those conditions included, but were not limited to home detention with GPS monitoring and an exclusion zone of Logan International Airport, a $100,000 bond secured by $15,000 in cash, prohibition against obtaining a passport or any other travel document and travel restricted to the City of Boston.  D. 18.  The order contemplated that Zheng would be detained in his apartment at 400 Brookline Avenue in Boston until December 31, 2019, but thereafter would reside at his uncle's residence.  D. 18 at 4.  The order also provided that Probation would conduct a home inspection.  D. 18 at 4.

Probation conducted its home inspection on December 19, 2019.  There, the probation observed that in the one-bedroom unit that Zheng shared with a roommate, there was an air mattress with a single sheet, shelving that was empty and that Zheng had two suitcases packed with his belongings.  Given these observations and Probation's concerns about Zheng's risk of flight, the Court suspended the December 18th release order, D. 20, 21, 24, and the government moved for reconsideration of that release order.  D. 27.  The Court treated this motion as a motion to reopen the detention hearing and held a further detention hearing on December 20, 2019, D. 28, and December 30, 2019.  D. 30, D. 39.

At the end of the hearing on December 30th, the court allowed the government's motion and ordered Zheng detained.  D. 39 at 41.  Even in doing so, the Court acknowledged that it was an "extremely close call," D. 39 at 41, and "[a]lmost every one [of the factors under § 3142(g)] supports release of this defendant."  D. 39 at 31.  In this regard, the Court pointed out that although the evidence against Zheng was strong on the false statement charge, he was unlikely to be facing a long sentence if convicted, and his personal history including his medical training, current Ph.D.

studies and his lack of criminal history or any substance abuse history weighed in favor of release. D. 39 at 38-39. On the record at the time, the Court was concerned about Zheng's lack of ties to United States and his sponsorship for research here by his native country, China, with which the U.S. has no extradition treaty. D. 39 at 39. Although the Court did not resolve whether Zheng truly intended to return to the United States on December 29, 2019, if he not been arrested before boarding his flight on December 10, 2019, the Court questioned whether it was credible that Zheng, whom admittedly would no longer be residing with his roommate, Jia Lin Li, at the 400 Brookline Avenue, Apartment 8A upon his return, would be able to rent another apartment in the two days before their December 31st lease expired. D. 39 at 41.

On January 21, 2020, a grand jury indicted Zheng for false statements in violation of 18 U.S.C. § 1001(a)(2), but also for smuggling goods from the United States in violation of 18 U.S.C. § 554. D. 41. On January 31, 2020 (and then refiled on February 3, 2020), Zheng moved for reconsideration of the detention order. D. 53; D. 60. In support of the motion, Zheng proffered, among other things, that he had already arranged for new housing in a different apartment in the 400 Brookline Avenue building before his scheduled trip to December 9th and his personal effects being packed in apartment, observed by Probation on December 19th, had reflected this change in residence. D. 52 at 2-3; D. 61 at 2-3. Zheng also noted that his wife and family had been able to put up additional monies for cash bail and, even in light of the indictment adding a smuggling charge, Zheng, if convicted, only would likely be facing a 0-6 month sentence. D. 52 at 3; D. 61 at 3. The government opposed Zheng's motion. D. 63, 65. After hearing from counsel, D. 64, 67, and ruling that changed circumstances warranted the reopening of the detention hearing, D. 81 at 8-9, the Court allowed the parties to introduce additional evidence and heard further argument from counsel on March 4, 2020, D. 73, 81 and March 6, 2020, D. 79. At the close of the March 4,

2020 hearing, the Court indicated that it was contemplating Zheng's release, D. 73, and did so on certain conditions reflected in the Release Order on March 6, 2020. D. 77, 79.

In the course of the hearings regarding Zheng's motion, the Court heard again from FBI Special Agent Kara Spice. D. 81 at 12. She reported that since the original detention hearing, Zheng no longer had his J-1 visa to be in the United States as Harvard had withdrawn its sponsorship. D. 81 at 12. She also attested that preliminary examination of some of Zheng's electronic devices revealed communications with others, including others in China, regarding the biological specimens he took from BIDMC, D. 81 at 14-15, but no indication that Zheng referenced such specimens as stolen in such communications. D. 81 at 18. The agent also testified that there was no evidence that Zheng had a lease at 400 Brookline Avenue other than for Apartment 8A, D. 81 at 13, but there was certainly proffer from defense counsel that Zheng originally had plans to live with Mr. Liu who had been temporarily staying with Zheng and his roommate until Liu's lease in another apartment began. D. 81 at 18. Zheng offered a few exhibits including but not limited to a receipt for his scheduled flight to/from China in December. D. 81 at 20. After hearing further argument from counsel, the Court indicated that it was contemplating release for Zheng on a number of conditions, D. 81 at 36-38, but wanted Probation to do an inspection of Zheng's apartment, the cash bail money posted provisionally and proof that Zheng's rent was paid through May (and, later, would want proof of it paid through August). D. 81 at 38. To allow these measures to be taken, the case was continued until March 6, 2020. D. 81 at 39.

On March 6, 2020, the Court indicated its receipt of proof of the payment of the additional $25,000 cash bond and proof of payment of Zheng's rent through May. D. 79. As it had contemplated, the Court allowed Zheng's release on conditions. D. 77, 79. The Release Order ordered, among other things, a $100,000 bond secured by a total of $40,000 cash, Zheng's home

detention with GPS location monitoring, travel restricted to Boston with an exclusion zone of Logan International Airport, maintenance of his residence at 400 Brookline Avenue, Apartment 8A and by June 1, 2020, proof of payment of his rent through August 2020. D. 77. The government requested a stay of the Release Order, opposed by the defense, and the Court denied this motion and the government's subsequent motion to reconsider same. D. 79. This Court denied a stay of the Release Order, but ordered an expedited hearing on the government's appeal of the Release Order, D. 76. D. 80. The Court heard from the parties on that motion on March 13, 2020 and took the matter under advisement. D. 90.

## Discussion

In determining whether there are conditions of release that will reasonably assure the appearance of a defendant, the Court must consider the factors under 18 U.S.C. § 3142(g) including the nature and circumstances of the offenses charged, including whether the offense is a crime of violence; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger that the defendant's release would pose. The Court has conducted an independent, *de novo* review of the record here and concludes that the combination of conditions, as adopted and reflected in the Release Order, will reasonably assure Zheng's appearance and, accordingly the Court DENIES the government's motion. The Court now addresses the factors that it considered under 18 U.S.C. § 3142(g) in reaching this conclusion.

As to the nature and circumstances of the criminal offenses, Zheng has now been charged both with making false statements (Count II) and smuggling goods from the United States (Count I). The defense does not question the seriousness of the charges, but posits that they are triable and Zheng endeavors to mount a vigorous defense to same. Accepting *arguendo* the government's argument that the weight of the evidence (at least as to the false statements charge) is strong, even

if Zheng is convicted, the advisory USSG range of 0-6 months contemplates the possibility of a non-prison sentence.  Even putting aside the intervening General Order 20-2 of this Court (issued March 12, 2020) suspending all jury trials and General Order 20-4 of this Court (issued March 16, 2020) continuing most criminal proceedings for sixty days, this factor weighs against detention given the likely advisory sentencing range.

The Court has also considered Zheng's personal history and characteristics.  He has no criminal history and is a medical doctor, now in the United States as a Ph.D. candidate working on cancer research.  D. 84 at 4.  It is correct that Zheng no longer has his J-1 visa, given the withdrawal of his sponsorship and is no longer employed at BIDMC as result of the events that lead to his charges here.  Although he is a Chinese national, his wife, also a doctor and Ph.D. candidate, remains in the United States working at an NIH laboratory in Maryland.  D. 84 at 4.  Lastly, the magistrate judge's initial concern about the plausibility of Zheng's housing situation upon any planned return from China at the end of December has been addressed by a more developed record and argument by counsel.  In addition to Zheng's receipt for his return trip to/from China, there was the agents' interview with Zheng's former roommate, Jialin Li, that indicated that since Li planned to return to China at the end of the month, another person (Yixin Wang, arriving from China with a wife and child) was going to take over the lease for Apartment 8A, a larger space, and Zheng, upon his return from China, was planning to move into another apartment at 400 Brookline Avenue, D. 87 at 9, with Weihai Liu, who had been temporarily staying in Apartment 8A with them.  D. 84 at 3.  That is, the extent that the Court had previously had been concerned about whether Zheng was going to find a new apartment before the first of the year when he returned from China at the end of December, the current record suggests that his living arrangements were already in the works.

The government has not identified a danger that Zheng's continued release imposes even as it posits that he remains a serious risk of flight.  Even as charged in the indictment, none of the alleged crimes are crimes of violence and there is nothing in Zheng's lack of criminal history or in the record otherwise as to his personal background to suggest any risk of danger.  Moreover, the combination of conditions including home detention, restriction of travel to the city and high secured bond reasonably assures the appearance of this defendant in normal circumstances and would do so now where there are national and international limits on any intercontinental travel.

For all of these reasons, this Court concludes that the combination of conditions adopted by the Court (Hennessy, Ch. M.J.) will reasonably assure the appearance of Zheng.

## **Conclusion**

Accordingly, the Court DENIES the appeal of the Release Order, D. 77, and that the Release Order shall remain in place pending trial.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge